


**FILED**

JUN 26 2013

SALLY HOWE SMITH, COURT CLERK
STATE OF OKLA. TULSA COUNTY

IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA

LARRY SPRIGGS, )
)
Plaintiff, ) Case No.:
) **CJ-2013-03027**
v. )
) ATTORNEY LIEN CLAIMED
THE PHOENIX INSURANCE )
COMPANY d/b/a TRAVELERS ) LINDA G. MORRISSEY
INSURANCE, a Foreign Corporation, )
)
)
Defendant. )

## PETITION

**COMES NOW** the Plaintiff, Larry Spriggs, by and through his attorney of record, Donald E. Smolen, II, and for his cause of action against Defendant The Phoenix Insurance Company, d/b/a Travelers Insurance, sets forth and states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a citizen of Oklahoma and resides in this judicial district.

2. Defendant The Phoenix Insurance Company, d/b/a Travelers Insurance ("Travelers") is a foreign corporation conducting regular business in Tulsa County, Oklahoma.

3. The acts, occurrences and omissions complained of herein occurred in Tulsa County, Oklahoma.

4. This Court has jurisdiction and venue is proper in Tulsa County, Oklahoma.

**EXHIBIT 2**

## FACTS COMMON TO ALL CLAIMS

5. Paragraphs 1-4 are incorporated herein by reference.

6. On or about June 2, 2011, Plaintiff was involved in a motor vehicle accident as a result of the negligence of an underinsured motorist.

7. On the same date, Plaintiff was insured under an insurance contract with Defendant Travelers where the Defendant was to provide uninsured/underinsured ("UIM") motorist coverage for the Plaintiff in accordance with said policy.

8. On or about November 2, 2011, Plaintiff notified Defendant Travelers he was opening a claim under said UIM policy.

9. On or about December 2, 2011, Defendant Travelers acknowledged Plaintiff's claim.

10. On or about January 10, 2012, Plaintiff made a demand on Defendant Travelers for his UIM policy limits that were due and owing, and requested that Defendant Travelers waive subrogation so Plaintiff could recover the third-party tortfeasor liability proceeds.

11. Immediately, Defendant Travelers began looking for a way out of paying Plaintiff his contractually owed UIM benefits. Defendant Travelers repeatedly inquired as to why Plaintiff was not pursuing his claim for injuries through the Oklahoma Workers' Compensation Court or under his private health insurance. Defendant Travelers also expressly disputed the findings of Plaintiff's treating physicians regarding the necessity for a shoulder surgery.

12. On or about January 19, 2012, Stephanie Peel, the adjuster handling Plaintiff's UIM claim, expressly denied the necessity of the shoulder surgery recommended for Plaintiff. She stated that she would not factor said surgical recommendation into Defendant's evaluation of Plaintiff's claim. Ms. Peel suggested that Plaintiff pursue his surgery through the Oklahoma Workers' Compensation Court or under his private health insurance, not his UIM policy with Defendant Travelers. Ms. Peel

then said that she believed that Defendant Travelers' handling of Plaintiff's UIM claim was headed toward a bad faith lawsuit. Thus, by its own admission, Defendant Travelers treated Plaintiff's UIM claim as if it was a bad faith claim.

13. On or about February 7, 2012, Plaintiff received a letter from Attorney Gene Robinson informing Plaintiff that Mr. Robinson would be assisting Defendant Travelers in evaluating Plaintiff's UIM claim.

14. Defendant Travelers, acting through Mr. Robinson, requested Plaintiff's MRI records so they could be reviewed by a doctor of Travelers' choosing. Mr. Robinson conveyed that if the reviewing doctor disagreed with Plaintiff's treating physician regarding the need for surgery, another medical examination of Plaintiff would occur by another doctor of Travelers' choosing.

15. Plaintiff provided Mr. Robinson with his MRI films.

16. Approximately one month later, an adjuster for Defendant Travelers contacted Plaintiff inquiring about the status of the MRI films Plaintiff had already provided to Mr. Robinson.

17. On or about October 29, 2012, Defendant Travelers sent Plaintiff to Dr. Brian Chalkin in Tulsa, Oklahoma, for a medical examination. Upon examination, Dr. Chalkin ordered that Plaintiff undergo an MRI Arthrogram.

18. Despite Dr. Chalkin's order, Defendant failed to schedule Plaintiff for the MRI Arthrogram. As he was in immense pain, Plaintiff inquired with Dr. Chalkin on several occasions as to when the MRI Arthrogram would be scheduled, but Plaintiff's attempts to resolve his claim were rebuffed.

19. Plaintiff's counsel was eventually able to contact Mr. Robinson and have the procedure scheduled as soon as possible.

20. On or about November 16, 2012, Plaintiff underwent the MRI Arthrogram ordered by Dr. Chalkin.

21. After Plaintiff underwent this procedure, Mr. Robinson assured Plaintiff he would schedule the follow up visit with Dr. Chalkin.

22. Nonetheless, in multiple inquiries by Plaintiff to Dr. Chalkin's office regarding Plaintiff's follow-up appointment, Plaintiff was repeatedly told that Defendant Travelers refused to authorize the follow-up appointment.

23. Plaintiff's pain could not wait for Defendant Travelers to fulfill its contractual and legal obligation. Plaintiff finally scheduled a follow up visit on his own and paid for the visit with his own money.

24. At his own expense, Plaintiff finally saw Dr. Chalkin again on January 30, 2013. At this time, Dr. Chalkin recommended surgery for Plaintiff's injuries from the June 2, 2011 motor vehicle accident.

25. After seeing Dr. Chalkin this second time, Defendant Travelers finally tendered the UIM benefits Plaintiff had been due for so long.

26. Plaintiff relied on Defendant Travelers to properly handle his claim(s) and make payment on the applicable claim(s) pursuant to the aforementioned insurance policy in a timely fashion. Plaintiff has met all of the conditions precedent for payment of claims under said insurance policy.

27. Defendant Travelers unreasonably delayed, failed and refused to pay the benefits under the insurance policy.

## CAUSES OF ACTION

### I. Breach of Contract

28. Paragraphs 1-27 are incorporated herein by reference.

29. Plaintiff was insured by an UIM motorist coverage policy with Defendant Travelers at the time of the accident.

4

30. At the time of the accident, the third party tortfeasor was an underinsured motorist, in that he did not have enough liability insurance coverage to thoroughly compensate the Plaintiff for his injuries.

31. Pursuant to the terms of the policy of UIM insurance with Defendant Travelers, this is a situation wherein the UIM coverage contained in said policy applies to the accident involving Plaintiff.

32. Plaintiff has performed all conditions precedent under the policy.

33. Defendant Travelers has breached its contract of insurance and has wholly refused or neglected to pay Plaintiff the value of his damages. Said failure constitutes a breach of contract of said insurance policy and the Plaintiff has sustained damages. Plaintiff is thus entitled to a judgment against Defendant Travelers for the personal injuries sustained while a party to said contract.

## II. Breach of the Implied Covenant of Good Faith and Fair Dealing

34. Paragraphs 1-33 are incorporated herein by reference.

35. Plaintiff had in effect, at the time of the June 2, 2011 accident, a policy providing UIM coverage with Defendant Travelers.

36. In its handling of Plaintiff's claim for UIM benefits under said insurance policy, and as a matter of routing practice in handling similar claims, Defendant Travelers breached its duty to deal fairly and in good faith towards Plaintiff in the following respects:

    a.    Requiring Plaintiff to pursue a claim against another party before he could be entitled to benefits under the policy with Defendant;

    b.    Failing to have knowledge or formal training regarding the terms of its underinsured motorist policy with Plaintiff;

    c.    Failure to comply with industry standards;

d.  Failing to reasonably construe the law applicable to Plaintiff's claim(s) and policy;

e.  Attempting to shift the burden of investigation onto Plaintiff's counsel;

f.  Unreasonably handling Plaintiff's claim causing Plaintiff to institute unnecessary litigation;

g.  Failing to pay Plaintiff the insurance benefits that he was entitled to under the policy at the time when Defendant knew or should have known that the Plaintiff was entitled to those benefits;

h.  Unreasonably delaying payment of benefits without a reasonable basis;

i.  Refusing to pay Plaintiff's claim for reasons contrary to the express provisions of the law;

j.  Intentionally and recklessly misapplying the provisions of the insurance policy;

k.  Using its unequal wealth and bargaining position to overwhelm and take advantage of the Plaintiff and to effect an economic gain for the Defendant by not paying an amount that it owed by virtue of the insurance contract;

l.  Failing to properly investigate the Plaintiff's claim for benefits;

m.  Failing to properly evaluate the investigation that was done on Plaintiff's claim for benefits;

n.  Failing to adopt and implement reasonable standards for the prompt investigation and handling of claims arising under the policies including the claims of the Plaintiff;

6

o.  Failing to attempt to act in good faith to effectuate a prompt, fair settlement for Plaintiff's claim.

37.  As a direct result of Defendant Travelers' breach of the implied covenant of good faith and fair dealing, Plaintiff suffered the loss of his insurance policy benefits, mental and emotional distress, anxiety, embarrassment, medical expenses and financial hardship.

### III. Punitive Damages

38.  Paragraphs 1-37 are incorporated herein by reference.

39.  The intentional, wanton and reckless conduct of Defendant Travelers in disregard of the rights of Plaintiff and others is, and was, conducted with full knowledge, in that Defendant Travelers knew, or should have known, of the severe adverse consequences of its acts and omissions and that such actions and/or inactions were not only detrimental to Plaintiff but the public in general.

40.  As a result of Defendant Travelers' intentional, malicious and reckless actions and omissions, Plaintiff is entitled to recover punitive damages.

WHEREFORE, based on the foregoing, Plaintiff prays that this Court enter judgment against Defendant Travelers and grant him the relief sought including, but not limited to, actual and punitive damages in excess of Ten Thousand Dollars ($10,000.00), costs, pre-judgment interest, post-judgment interest and all other relief deemed appropriate by this Court.

7

Respectfully submitted,

SMOLEN, SMOLEN & ROYTMAN, PLLC

*[signature]*

Donald E. Smolen, II, OBA #19944
Jack Beesley, OBA #30484
701 S. Cincinnati Ave.
Tulsa, OK 74119
(918) 585-2667
(918) 585-2669 (Fax)
*Attorneys for Plaintiff*